1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2                         WESTERN SECTION

3

4

5

    United States of America  )
6                             )              14cr30031-MGM
        vs                    )
7                             )
    Victor Santini            )
8   _____)

9

10              Before The Honorable Mark G. Mastroianni
                  United States District Court Judge
11                    Status conference Held on
                        April 29, 2015.
12

13

14

    APPEARANCES:
15

16  For the government:  Todd E. Newhouse, Assistant United
    States Attorney, 300 State Street, Suite 230, Springfield,
17  MA 01105.

18
    For the defendant: Joseph Franco, 51 Park Avenue, Suite 8,
19  West Springfield, MA 01089.

20

21

22                  Alice Moran, CSR, RPR, RMR
                    Official Federal Court Reporter
23                    300 State Street, Room 303D
                        Springfield, MA 01105
24                         (413)731-0086
                      alice.moran@verizon.net
25

```
1    (Hearing commenced at 1:44.)

2    (The defendant is present.)

3                THE CLERK:  Judge, the matter before the Court

4    is United States versus Victor Santini, Criminal Matter

5    14-30031.

6        Can counsel please identify themselves for the

7    record?

8                MR. NEWHOUSE:  Todd Newhouse for the United

9    States.

10               MR. FRANCO:  Joseph Franco for Mr. Santini, Your

11   Honor.

12               THE COURT:  All right.  Afternoon, Mr. Santini.

13               THE DEFENDANT:  Good afternoon.

14               THE COURT:  Counsel, nice to see you.

15       So we're here today to follow up on the issue that

16   you had provided me regarding recusal.

17               MR. FRANCO:  Yes, Your Honor.

18               THE COURT:  So now that motion, was that a

19   motion requesting recusal or was that just an

20   informational package put together?

21               MR. FRANCO:  It's a motion.  My client is

22   requesting recusal, Your Honor.

23               THE COURT:  Okay.

24               MR. FRANCO:  And let me explain it's not because

25   Your Honor is a sitting judge and because he's now in
```

1  federal court because he was indicted after Your Honor

2  took the bench.  The crux of this matter is --

3        THE COURT:  Was he charged in the state court to

4  begin the whole process?

5        MR. FRANCO:  No, Your Honor.  What it was is an

6  ongoing 60 Minutes Operation, and I provided you a

7  transcript in which at the detention hearing -- I wasn't

8  counsel then -- but Mr. Newhouse said that he was

9  identified as an upper-level leader of the Latin Kings by

10  the Western Mass. Gang Force early on -- excuse me.

11  That's a mistake -- of La Familia early on in the

12  investigation provided information in 2013 by the CHS was

13  recruited and the investigation began.

14      The controlled purchases that are alleged to have

15  taken place were April 14th and April 23rd.  Your Honor,

16  we're saying that this was on ongoing operation.  Your

17  Honor at the time was the chief law enforcement officer

18  for Hampden County.  Your office interacted with that

19  investigation.

20      The fact that he was identified early as a

21  high-ranking member might have caused information to come

22  through law enforcement about Mr. Santini during that

23  relevant period and that is the basis of the request for

24  recusal.  I cited the statute.  I've relied on the

25  *Liljeberg* and *Chantal* cases.

1        Simply said, Your Honor, if you were exposed to such

2    information, even if it's not in your mind or brought to

3    your attention, remember that it is one factor that might

4    be considered and that the safer course would be to send

5    this on to someone else.

6        I will also say that the information about Mr.

7    Santini during that relevant period and his role in the

8    gang would be something that if he were to go to

9    sentencing would be a highly-contested factor and it may

10   include enhancements.  We will be obviously looking to get

11   below a guideline sentence if we were at that point and

12   that is the entire basis - the focus on Mr. Santini in

13   2013 and he was identified early and during the period

14   that Your Honor was in control.

15            THE COURT:  Thank you.

16       On that issue I have absolutely no memory of Mr.

17   Santini, his name being brought up to me in the past in

18   any capacity, and I don't think you're -- I think you're

19   pretty clearly not asserting that there's an actual

20   conflict.  You're just asserting that there may be, am I

21   correct?

22            MR. FRANCO:  There may be a potential.

23            THE COURT:  Right, the potential and that would

24   go to a potential appearance.

25       So I think, Mr. Newhouse, maybe you can correct me if

1    I'm wrong, I think there was at least two -- I know for

2    sure of one other individual that was part of this

3    operation that's already been processed and through this

4    court, is that correct?

5              MR. NEWHOUSE:  There's eight in total.

6              THE COURT:  How many have I already -- I think

7    Mr. Murphy?

8              MR. NEWHOUSE:  They're all part of this and the

9    one you recused you went to side-bar in which you had the

10   defendant explain his Fifth Amendment privilege and that's

11   the only one you recused yourself on.

12             THE COURT:  That's correct.  That was a recusal

13   on an issue completely different, absolutely completely

14   different than what's being raised here.

15        So other individuals involved in this have been

16   processed and through -- I have processed their cases.

17   This particular issue has not been raised.  It's in my

18   mind appropriately raised, well raised by Mr. Franco.  I

19   think there's quite a bit of distance between myself, my

20   capacity as district attorney and this case.  The first

21   thing would be he was not charged in the state --

22             MR. FRANCO:  No, Your Honor.

23             THE COURT:  -- before this case.  It started

24   over here in federal court so I was not involved in having

25   any complaint issued against him or any state indictment.

1    When you used the term task force and referred to

2    those types of law enforcement groups of state law

3    enforcement and federal law enforcement, certainly it

4    includes law enforcement that were affiliated with the

5    district attorney's office when I was in the office, but

6    the reality is on many investigations that affiliation is

7    not one of me when I was district attorney overseeing

8    every microscopic or minuscule piece of the investigation;

9    that is, being given names and identities and making

10   logistic and strategic plans about what would be done.

11   Now certainly that did happen in some cases but not in all

12   cases, and I have just absolutely no memory of the facts

13   of this case being one of those that I was involved in the

14   micromanagement of.

15       Additionally, there has been at least one other case

16   in front of me where I did recuse myself and it was a

17   situation that after one of these types of what's been

18   categorized as a multi-agency sweep made some arrests,

19   there was a type of press event in which the U.S.

20   attorney's office and a representative from my

21   then-district attorney's office were present where there

22   was some type of showing that the actual individuals

23   involved were brought to my attention or that I had

24   particular information about their names and their faces

25   and who they were, and that's different from where we

```
 1    stand in this case.
 2         This case just doesn't have that type of information
 3    that they stood out -- they I'm saying individuals
 4    including Mr. Santini who were arrested -- stood out to me
 5    as district attorney in any way.
 6         I don't find that a sufficient showing has been made
 7    of an appearance or potential of a conflict just by the
 8    fact there was peripheral involvement or some involvement
 9    of agencies assigned to my then-district attorney's office
10    who are involved in this investigation when he was never
11    charged in the state under these circumstances.  There may
12    be circumstances that would be a little different, but I
13    don't see it in this case.
14              MR. FRANCO:  Your Honor, my client just wanted
15    me to bring to your attention that Operation 60 Minutes
16    was ongoing.  I think this was part four or five, and,
17    yes, Your Honor was at certain press conferences where
18    arrests were made and the chief.
19              THE COURT:  Right.
20              MR. FRANCO:  But that was -- I will tell you
21    that was before Your Honor took the bench and before his
22    arrest, but there was a number of Operation 60 Minutes
23    involved.
24              THE COURT:  Right.  If you have information to
25    show me that there was some -- I'm just saying
```

1    particularly the circumstances that I know about Mr.

2    Santini -- if there's something else that I'm not

3    recalling about my involvement, you've given me several

4    news articles and transcripts, if there's something else,

5    I'm absolutely happy to look at it.

6         The last thing, the very last thing I want to do is

7    create an appearance of any conflict, but I have to be

8    fair when I'm assessing it.  I'm just not seeing that

9    there is a legitimate one here because there is also a

10   legitimate interest like resolving the cases here that

11   arise here, and for that sake alone but also for the sake

12   of judicial economy and managing the cases that are heard

13   here versus the cases that are sent out in other courts.

14   But if I sensed that there was anything that rose to that

15   level and if you find anything else, let me know.

16              MR. FRANCO:  I will.

17              THE COURT:  But I can't and will not in this

18   case just allow this to go to another judge on the amount

19   of showing that you're able to make in this case.

20              MR. FRANCO:  Thank you, Your Honor --

21              THE COURT:  All right.

22              MR. FRANCO:  -- for the consideration.

23              THE COURT:  Now, where do we stand as to what

24   would be happening next in this case?

25              MR. FRANCO:  Well, Your Honor, I think I said

1   pretrial discovery was done.  Certain things will be

2   disclosed prior to trial pursuant to our agreements, so I

3   believe Mr. Newhouse would be making the next request.

4           THE COURT:  Is there an actual trial date?

5           MR. FRANCO:  Not one set, no.

6           THE COURT:  I think we do have a trial date

7   gentlemen.  Madam clerk?

8           THE CLERK:  I thought we had one in June.

9           MR. FRANCO:  I believe we struck it the last

10  time.

11          THE COURT:  That's right.  It was stricken,

12  correct.  We can put it on for a status if you think there

13  needs to be some time for discussion.

14          MR. FRANCO:  I think there would be discussion,

15  very much so, yes.

16          THE COURT:  Why don't we do this:  We'll give

17  you a date to file a very short brief joint status report

18  with the court essentially just letting me know if it's

19  going to trial, motion, or what would be next and then

20  we'll just schedule the next date whenever you say you

21  need for a date.  If you say you need a status conference

22  because you need to air things out in court, we will come

23  in for that.  So two weeks or so?

24          MR. FRANCO:  Yes.

25          THE COURT:  Will that be all right?

1           MR. NEWHOUSE:  Are you going to set a date

2     though?

3           THE COURT:  Yes.  We'll give you a date for the

4     filing of a joint status report by you, Mr. Franco.

5           MR. NEWHOUSE:  I'd just as soon you set a status

6     date so we don't fall off the calendar so we have a date

7     certain.

8           THE COURT:  All right.

9           MR. NEWHOUSE:  Speedy trial can be waved and so

10    forth.

11          THE CLERK:  The status report would be due on

12    May 20th and then May 27th.

13          THE COURT:  That will be our in court date to

14    discuss what issues you raise in the joint status

15    report.

16          THE CLERK:  Two o'clock.

17          MR. FRANCO:  Thank you.

18          MR. NEWHOUSE:  We have a sentencing at two that

19    day.

20          THE CLERK:  It might be in front of Judge

21    Ponsor.  You have Vargas at three with us.

22          MR. NEWHOUSE:  Can we do 3:30?  I have a two

23    o'clock sentencing that must be down the hall.

24          THE CLERK:  We'll do 3:30.  Your two o'clock is

25    with Judge Ponsor, so 3:30.

1    MR. FRANCO:  Your Honor, I'm going to ask -- my

2   client very much wants to come to these sessions.  I know

3   we don't bring defendants in all the time, but he finds it

4   very informative and he's able to make good decisions once

5   he's in court and hears what's going on so I'd make the

6   request that he be brought in that day.

7    THE COURT:  Absolutely.  I think that's

8   appropriate especially if he -- and some people want to

9   and some people don't want to be involved with the

10  preliminary things.  If he wants to be here as part of his

11  defense, absolutely he should be allowed to be here.

12   MR. FRANCO:  Thank you.

13   MR. NEWHOUSE:  You agree to waive speedy trial?

14   MR. FRANCO:  Yes.

15   MR. NEWHOUSE:  So the upshot of the status

16  report is Mr. Franco will inform me whether it's a status

17  or trial?

18   THE COURT:  Or if it's a motion to suppress.

19   MR. NEWHOUSE:  Of course.

20   THE COURT:  Thank you.  Mr. Franco, as I said,

21  if the circumstances change and you have something to

22  supplement, please do so.  You have no time limit but just

23  at some point we're going to be moving forward so if

24  you're going to be doing that, the sooner the better.

25   MR. FRANCO:  I'll continue to look at this

1  carefully.  I've given you what I have.  Thank you.

2            THE COURT:  Thank you.

3            THE CLERK:  All rise.

4            THE DEFENDANT:  Thank you, Your Honor.

5  (Hearing concluded at 1:58.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

1

2

3

4       I, Alice Moran, RMR, RPR, CSR, Official Court

5   Reporter for the United States District Court for the

6   District of Massachusetts, do hereby certify that the

7   foregoing transcript constitutes, to the best of my skill

8   and ability, a true and accurate transcription of my

9   stenotype notes taken in the above-entitled matter.

10

11

12   Date:   April 5, 2017

13

14   /s/ Alice Moran

15   _____
     Alice Moran
16   Offical Court Reporter

17

18

19                 Alice Moran, CSR, RPR, RMR
                   Official Court Reporter
20                 300 State Street, Room 303D
                   Springfield, MA 01105
21                     413-731-0086
                   alice.moran@verizon.net
22

23

24

25